**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**MARTYE M. MADKINS, III,**

**Plaintiff,**

**v.**

**T-MOBILE WIRELESS TELEPHONE COMPANY, et al.,**

**Defendants.**

**Case No. 5:15-cv-03101-HLT-KGS**

**MEMORANDUM AND ORDER**

Plaintiff Martye M. Madkins III brings this action pro se,[1] asserting claims for violation of state and federal wiretap statutes, violation of the Fourth Amendment, and conspiracy. Doc. 70. Each of the remaining defendants—Defendants T-Mobile Wireless Telephone Company, Glen Virden, Timothy Brown, and Alvin Babcock—has moved to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Docs. 74, 76, 85.

After Plaintiff failed to file any response to the pending motions to dismiss, the Court issued an order to show cause why the motions should not be granted as unopposed pursuant to District of Kansas Rule 7.4(b). Doc. 87. In response to the Court's show cause order, Plaintiff requested additional time to respond to the motions to dismiss. Doc. 88. The Court granted Plaintiff's request and gave Plaintiff until July 27, 2018 to file his responses. Doc. 89. However, over three months later, Plaintiff has yet to respond to any of the pending motions. Because Plaintiff failed to respond to Defendants' motions to dismiss, and because Plaintiff otherwise fails

[1] Because Plaintiff proceeds pro se, his pleadings are construed liberally. *See Ivory v. Platt*, 2016 WL 5916647, at *6 (D. Kan. 2016). However, Plaintiff is not relieved of his burden of alleging sufficient facts upon which a recognized legal claim could be based. *Id.*

to state a claim for relief, the Court grants Defendants' motions (Docs. 74, 76, 85) and dismisses Plaintiff's claims.

## I. BACKGROUND

### A. Criminal Investigation

The following background is based on the record and accepts as true Plaintiff's well-pleaded factual allegations.[2] This case stems from the interception of cellular communications in connection with an investigation—jointly conducted by the Kansas Bureau of Investigation ("KBI"), the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department—into a suspected narcotics-trafficking conspiracy. In or around March and April 2013, Geary County District Court Judge David Platt entered a series of orders authorizing the interception of certain of the suspected conspirators' "wire communications." Defendant Glen Virden—special agent with the KBI in charge of the investigation—executed the orders, with directives to Defendant T-Mobile Wireless Telephone Company ("T-Mobile") and other service providers to intercept communications transmitted to and from the targeted phones. Virden affixed his signature to the orders, along with Defendant Timothy Brown (former chief of the Junction City Police Department) and Defendant Alvin Babcock (detective with the Junction City Police Department), among others.

---

[2] The facts set forth in Parts I.A and B are taken from Plaintiff's amended complaint (Doc. 70) and the records of Plaintiff's criminal case (Case No. 5:13-cr-40060-DDC). *See Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) (holding that, when considering a motion to dismiss, "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record"), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001); *Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008) (finding district court was correct to take judicial notice of state court materials in considering motion to dismiss).

Pursuant to the orders, the investigating agents intercepted phone calls and text messages from the conspirators' phones. Federal criminal drug trafficking charges were ultimately filed against Plaintiff in this Court.

**B. Motions to Suppress**

**1. Text Message Evidence**

In connection with the underlying criminal case, Plaintiff (and his co-defendants) moved to suppress text message evidence, arguing that the state court orders, on their face, authorized interception of "wire communications" only and did not permit authorities to intercept "electronic communications" (such as text messages). District Judge Daniel D. Crabtree agreed that the orders authorized interception of "wire communications" only and that text messages constitute "electronic" rather than "wire" communications. Judge Crabtree declined to suppress the text message evidence, however, finding that the investigators' conduct in intercepting the text messages fell within the "good faith" exception to the Fourth Amendment's exclusionary rule. In so holding, Judge Crabtree found that "the issuing judge and executing officers both understood the intended scope of the wiretap authorization, and that the authorization included interception of text messages." *United States v. Banks*, 2014 WL 4261344, at *5 (D. Kan. 2014). Judge Crabtree concluded that the officers' reliance on this understanding was "objectively reasonable." *Id.*

**2. Extra-Territorial Communications**

Plaintiff and his co-defendants also moved to suppress wiretap evidence, arguing that investigators had improperly intercepted communications outside of the territorial jurisdiction of the issuing judge (Judge Platt). During the hearing on Plaintiff's motion, Judge Crabtree ruled that the orders violated Kansas law to the extent they authorized the interception of communications on phones located outside Judge Platt's judicial district. Judge Crabtree accordingly ordered that

the government present evidence regarding the physical location of the tapped phones at the time of the intercepted calls in order to determine which communications, if any, warranted suppression.

Following the presentation of evidence, Judge Crabtree suppressed all but 7,000 of the 67,000 total communications intercepted during the course of the investigation. As to the 7,000 surviving communications, Judge Crabtree ruled that the government had offered sufficient evidence that the communications were made by phones located inside Judge Platt's territorial jurisdiction. Judge Crabtree ordered the suppression of the extra-territorial intercepted communications. In connection with this decision, although declining to apply the exclusionary rule's good faith exception to evidence collected from wiretaps, Judge Crabtree noted that "one would not expect the officers executing search warrants to have apprehended the subtle, technical jurisdictional defect that forms the basis of the Court's threshold suppression ruling." *United States v. Banks*, 2015 WL 2401048, at *3 (D. Kan. 2015), *vacated on other grounds by Banks v. United States*, 138 S. Ct. 2707 (2018).

**C. Civil Case**

Plaintiff proceeded to file this action for civil relief against various county officials, agencies, agency officials, and service providers,[3] alleging they violated state and federal law and the United States Constitution by intercepting and disclosing his communications (both oral and text) without proper judicial authorization. Docs. 1, 70. In the operative complaint,[4] Plaintiff asserts that Virden, Brown, and Babcock knew or had reason to know that the state court orders

[3] The majority of the defendants have since been dismissed, including: Judge Platt; Steven Opat (former Geary County District Attorney); Brad Schoen (Director of the Riley County Police Department); the KBI; the Junction City Police Department; and the Riley County Police Department. Doc. 69.

[4] Plaintiff was granted leave to amend his complaint on February 20, 2018, and the amended complaint was entered by the Court. Docs. 69-70.

directed the interception of communications outside of Judge Platt's territorial jurisdiction. Doc. 70 ¶ 11. Plaintiff further alleges that—upon receipt of the order—T-Mobile improperly intercepted and disclosed text messages to the investigating authorities, even though the order did not expressly authorize the interception and disclosure of "electronic communications." *Id.* at ¶¶ 12-13. Plaintiff claims that Virden, Brown, and Babcock knew they illegally obtained the messages and extra-territorial calls, but nonetheless provided them to prosecutors in violation of state and federal law. *Id.* at ¶¶ 14-16.

Based on these allegations, Plaintiff asserts claims for: violation of the Kansas wiretap statute, K.S.A. §§ 22-2514, *et seq.*; violation of the federal Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510, *et seq.*; violation of the Fourth Amendment; and conspiracy. *Id.* at ¶¶ 21-45. Each of the four remaining defendants—T-Mobile, Virden, Brown, and Babcock—moves to dismiss Plaintiff's claims. Docs. 74, 76, 85.

**D. Plaintiff's Failure to Respond to the Pending Motions to Dismiss**

After Plaintiff failed to respond to T-Mobile, Brown, and Babcock's motions to dismiss,[5] the Court issued an order directing Plaintiff to show cause to the Court, on or before June 20, 2018, why the motions should not be granted as unopposed pursuant to District of Kansas Rule 7.4(b). Doc. 87 at 1. The Court further ordered that Plaintiff file responses to the motions by June 20, 2018. *Id.* The Court cautioned that a failure to comply with the order would result in the Court considering the motions to dismiss as unopposed. *Id.* at 1-2.

On June 13, 2018, the Court received a letter from Plaintiff in response to the Court's order. Doc. 88. In his letter, Plaintiff requested an extension of time to respond to the pending motions,

[5] Virden's motion to dismiss (filed May 21, 2018) was not included in the Court's show cause order because, at that point, Plaintiff's deadline for response had not yet passed. Doc. 87 at 2 n.2.

claiming, as justification, that he had not received copies of the motions to dismiss. *Id.* Noting that Plaintiff had been relocated to two different correctional facilities since the motions were filed, and therefore may not have received service of the motions, the Court granted the requested extension. Doc. 89 at 1. The Court directed the Clerk to send Plaintiff copies of the docket sheet and the pending motions (including Virden's) and further ordered that Plaintiff file his responses to all pending motions to dismiss on or before July 27, 2018. *Id.* at 1-2. Plaintiff nonetheless failed to respond to any of the motions to dismiss.

## II. ANALYSIS

### A. Effect of Plaintiff's Failure to Respond

Local rules dictate that, unless the court orders otherwise, responses to motions to dismiss must be filed and served within 21 days. D. Kan. Rule 6.1(d)(2). Absent a showing of excusable neglect, District of Kansas Rule 7.4(b) states that a party or attorney who does not respond to a motion within the specified timeframe "waives the right to later file such brief or memorandum." *Id.* at 7.4(b) (emphasis added). Where a party fails to respond, therefore, the court will consider the motion as uncontested and will ordinarily grant the motion without further notice. *Id.* As set forth above, despite the Court's admonitions, Plaintiff has not responded to any of the pending motions to dismiss. Because Plaintiff failed to comply with the Court's order requiring that he respond to the pending motions by July 27, 2018, the Court will consider Defendants' motions as uncontested pursuant to District of Kansas Rule 7.4(b).

A court, however, cannot grant a defendant's motion to dismiss based exclusively on the plaintiff's failure to respond. *Khayet v. Cushing*, 2018 WL 3389876, at *1 (D. Kan. 2018). The Tenth Circuit has held that, "even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's

complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003). The Court therefore reviews the arguments raised in Defendants' motions to dismiss against the allegations in Plaintiff's amended complaint.

**B. Defendants' Motions to Dismiss**

Virden, Brown, Babcock, and T-Mobile each move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim for relief. Docs. 74, 76, 85. Under Rule 12(b)(6), to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's claim is facially plausible if he pleads sufficient factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully" but "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

This standard results in two principles that underlie a court's analysis. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Stated differently, though the court must accept well-pleaded factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). "In keeping with these [two] principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

The arguments advanced by Virden, Brown, and Babcock in their respective motions have considerable overlap, with each arguing (1) that their "good faith reliance" upon the state court's orders shields them from exposure under federal and state wiretap statutes, (2) that qualified immunity protects them from individual liability for Plaintiff's Fourth Amendment claim,[6] and (3) that, in any event, Plaintiff fails to state a claim for relief. Docs. 75, 86. Babcock—who remains subject to a claim in his capacity as a detective with the Junction City Police Department—also argues that Plaintiff fails to allege any unconstitutional policy or custom sufficient to hold him liable in his official capacity. Doc. 75 at 6-7.

Like Virden, Brown, and Babcock, T-Mobile argues that its good faith reliance exempts it from liability for violation of Kansas wiretap laws and the ECPA. Doc. 77 at 6-7. With respect to Plaintiff's constitutional claim, T-Mobile argues that it cannot be held liable because (1) it has not engaged in any state action, and (2) even if it had, it is nonetheless entitled to absolute immunity. *Id.* at 3-6. The Court addresses each of Plaintiff's claims in turn.

[6] In his amended complaint, Plaintiff names Virden, Brown, and Babcock in both their individual and official capacities. Doc. 70 ¶¶ 2-4. However, the Court previously dismissed Plaintiff's official capacity claims against Virden and Brown; only their individual capacity claims remain. Doc. 69 at 7. Both Plaintiff's official and individual capacity claims against Babcock remain. *Id.*

### 1. Violation of State and Federal Wiretap Statutes

Counts I and II of Plaintiff's amended complaint assert claims against Defendants under the Kansas wiretap statute and the federal ECPA, which impose civil liability on those who unlawfully intercept electronic communications. *See* 18 U.S.C. § 2520; K.S.A. § 22-2518. However, both statutes provide a "complete defense" where a defendant has relied in good faith upon a court order authorizing interception. *See* 18 U.S.C. § 2520(d)(1) ("A good faith reliance on . . . a court warrant or order . . . is a complete defense against any civil or criminal action brought under this chapter or any other law."); K.S.A. § 22-2518(2) ("A good faith reliance by any person on a court order authorizing the interception of any wire, oral or electronic communication shall constitute a complete defense in any civil or criminal action brought against such person based upon such interception."). In their motions to dismiss, Defendants argue that, because Judge Crabtree found in the underlying criminal case that Defendants relied in good faith upon the state court orders, they are immune from suit under the good faith exceptions and Counts I and II therefore fail to state a claim for relief.

The Court agrees with Defendants and finds that the record establishes Plaintiff's wiretap claims are barred by the good faith defense. As set forth above, before his criminal trial, Plaintiff moved to suppress wiretap and text message evidence, asserting similar arguments to the ones raised in this case. In ruling on Plaintiff's motions to suppress, Judge Crabtree held that the investigators' conduct in intercepting the text messages fell within the good faith exception to the Fourth Amendment's exclusionary rule, finding that "the issuing judge and executing officers both understood the intended scope of the wiretap authorization, and that the authorization included interception of text messages." *Banks*, 2014 WL 4261344, at *5. Judge Crabtree concluded that the officers' reliance on this understanding was "objectively reasonable." *Id.* Judge Crabtree

further noted in connection with his decision on Plaintiff's motion to suppress extra-territorial communications that "one would not expect the officers executing search warrants to have apprehended the subtle, technical jurisdictional defect that forms the basis of the Court's threshold suppression ruling." *Banks*, 2015 WL 2401048, at *3.

Judge Crabtree's reasoning in the underlying criminal case is equally applicable to the arguments raised in Plaintiff's civil case. *See Wright v. Florida*, 495 F.2d 186, 1090 (5th Cir. 1974) (holding that good faith reliance on a court order is a defense to both Fourth Amendment claims and Section 2520 of the ECPA). And the amended complaint fails to assert any facts from which the Court could reasonably infer that Defendants did not act in good faith reliance upon Judge Platt's orders. Although Plaintiff generally alleges that Defendants intercepted and disclosed communications despite knowing (or having reason to know) that the interceptions and disclosures were not properly authorized (Doc. 70 ¶¶ 11-16), bald allegations are not enough. Defendants' good faith reliance provides a complete defense to Plaintiff's wiretap claims. *See Reed v. Labbe*, 2012 WL 5267726, at *9 (C.D. Cal. 2012) (relying on findings of the district court and court of appeals in plaintiff's underlying criminal case in concluding that Section 2520(d) provided a complete defense to plaintiff's claims under the ECPA, warranting dismissal under Rule 12(b)(6)). The amended complaint therefore fails to state a claim for violation of state and federal wiretap statutes.[7]

[7] T-Mobile also falls under the ECPA's exception for providers of wire or electronic communication service. *See* 18 U.S.C. § 2511(2)(a)(ii). Under the ECPA, "provider[s] of wire or electronic communication service" (such as T-Mobile) are exempted from liability "for providing information, facilities, or assistance in accordance with the terms of a court order." *Id.* Dismissal of Plaintiff's ECPA claim—as against T-Mobile—is warranted on this additional basis.

### 2. Violation of the Fourth Amendment

Next, Plaintiff claims Defendants' conduct in allegedly violating federal and state wiretap laws—as detailed in Part II.B.1, *supra*—violated his Fourth Amendment rights. Doc. 70 ¶ 42. Plaintiff brings this claim pursuant to 42 U.S.C. § 1983, which provides a cause of action against any individual who, under color of state law, causes another to be deprived of a constitutional right. *See West v. Atkins*, 487 U.S. 42, 48 (1988). For the reasons set forth below, Plaintiff fails to state a claim under Section 1983 against any of the Defendants, warranting dismissal pursuant to Rule 12(b)(6).

#### a. Virden and Brown

Because this Court previously dismissed Plaintiff's Section 1983 claims against Virden and Brown in their official capacities, only Plaintiff's individual capacity claims against Virden and Brown remain.[8] In their motions to dismiss, Virden and Brown argue that qualified immunity shields them from individual liability. Docs. 75 at 7-10, 86 at 4-6. For the following reasons, the Court agrees.

Qualified immunity protects public officials from civil liability provided their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 23 (2009). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Once an official has raised a defense of qualified immunity, the plaintiff bears the burden to show

[8] *See supra* note 6.

(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the conduct at issue. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).[9]

Under the second prong, a right is "clearly established" for purposes of the qualified-immunity analysis where it is sufficiently clear that every reasonable official would have understood that his conduct violated that right. *Mullenix*, 136 S. Ct. at 308. To satisfy this step, courts do not require a case "directly on point," but the plaintiff must identify existing precedent—either controlling authority or "a robust 'consensus of cases of persuasive authority'"—placing the constitutional question "beyond debate." *al-Kidd*, 563 U.S. at 741-42. To do that, the precedent "must be 'particularized' to the facts of the case" before the Court. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (noting that courts should not define "clearly established law" at "a high level of generality").

Here, Plaintiff has not met his burden of showing a violation of clearly established law. In his amended complaint, in support of his constitutional claim, Plaintiff asserts: that a violation of state and federal wiretap laws is "necessarily" a violation of the Fourth Amendment; that the statutes "were specifically codified" to protect Plaintiff's constitutional rights; and that a violation of these statutes alone is sufficient to establish a cause of action under Section 1983. Doc. 70 ¶ 42. Yet Plaintiff identifies no authority—let alone a controlling opinion or a "robust consensus" of persuasive authority—supporting his contentions or otherwise holding that the Fourth Amendment is violated by the <u>specific facts</u> presented here. The onus is on Plaintiff to identify existing precedent placing the constitutional question beyond debate. Because Plaintiff has not satisfied his

---

[9] The order in which the two prongs of the qualified-immunity analysis are evaluated is within the discretion of this Court. *See al-Kidd*, 563 U.S. at 735.

burden, qualified immunity shields Virden and Brown from individual liability on Plaintiff's constitutional claim.

**b. Babcock**

Unlike Virden and Brown, Babcock remains subject to claims against him in both his individual capacity and his official capacity as a detective with the Junction City Police Department.[10] For the reasons set forth with respect to Virden and Brown above, qualified immunity also protects Babcock from individual liability for Plaintiff's Section 1983 claim. Plaintiff has not shown a violation of clearly established law. In the absence of such a showing, the Court must dismiss Plaintiff's Section 1983 claim against Babcock in his individual capacity.

Plaintiff's claims against Babcock in his official capacity likewise fail because Plaintiff fails to allege any unconstitutional policy or custom as required under Section 1983. While an individual capacity suit seeks to impose personal liability upon a government official for actions taken under color of state law, an official capacity suit is, in essence, an action against the entity that employs the officer. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Under Section 1983, although governmental entities may be subject to liability, they may not be held liable on a respondeat superior theory. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978). A plaintiff must instead show that "the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000).

Plaintiff's allegations do not permit the Court to reasonably infer that Babcock is liable under Section 1983. In his amended complaint, Plaintiff claims that Babcock (along with Virden

---

[10] *See supra* note 6.

and Brown) knew Plaintiff's text messages and extra-territorial calls were illegally obtained but provided them to prosecutors anyway, asserting that this conduct demonstrated an unconstitutional policy or custom. Doc. 70 ¶ 15. Plaintiff does not allege any facts tending to show that Babcock's alleged actions were characteristic of any policy or custom of the Junction City Police Department, or that the conduct alleged infringed upon Plaintiff's constitutional rights. And Plaintiff fails to allege that Babcock had any "policy making authority" within the Junction City Police Department, alleging only that <u>Brown and Virden</u> had "final decision making authority" within their respective offices (though he provides no factual allegations to support this assertion, and, though, as explained above, Plaintiff's official capacity claims against Brown and Virden have been dismissed). *Id.* at ¶ 11. The allegations presented in the amended complaint do not provide a basis for the Court to reasonably infer that Babcock is liable under Section 1983. Accordingly, Plaintiff's official capacity claim against Babcock must be dismissed for failure to state a claim.

**c. T-Mobile**

Plaintiff's Section 1983 claim against T-Mobile is likewise subject to dismissal for two independent reasons. First, Plaintiff fails to allege facts sufficient to show an essential element of his claim: that T-Mobile acted under color of state law. To state a claim under Section 1983, a plaintiff must (1) allege the violation of a constitutional right or a right secured under the laws of the United States, and (2) show that the alleged violation was committed by an individual acting under color of state law. *West*, 487 U.S. at 48. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Under Section 1983, therefore, claims may only be brought against defendants who represent the state in some capacity.

*Nat'l Collegiate Athletic Ass'n v. Tarkanian,* 488 U.S. 179, 191 (1988). "Private individuals and entities may be deemed state actors, however, if they have 'acted together with or [have] obtained significant aid from state officials, or [if their] conduct is otherwise chargeable to the state.'" *Johnson v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

Plaintiff has not alleged facts sufficient to show that T-Mobile engaged in the requisite state action to support his Section 1983 claim. Indeed, although Plaintiff alleges T-Mobile "act[ed] under the color of state law," the only conduct Plaintiff attributes to T-Mobile in his amended complaint is, generally, that T-Mobile intercepted and disclosed his text messages to investigators without proper judicial authorization. Doc. 70 ¶¶ 7, 12-13. Acting in accordance with a court order does not itself constitute action performed under color of state law. *See Green v. Truman*, 459 F. Supp. 342, 344-45 (D. Mass. 1978) (finding state court order "does not clothe [defendant] with the authority of state law necessary to satisfy the state actor requirement"); *Melnitzky v. HSBC Bank USA*, 2007 WL 1159639, at *9 (S.D.N.Y. 2007) ("[T]he mere compliance with a court order does not constitute action under color of state law."). Plaintiff alleges no other conduct to establish that T-Mobile, as a private actor, acted under color of state law. Plaintiff's bare allegations and legal conclusions are insufficient to state a claim.

Second, T-Mobile is absolutely immune from liability for Plaintiff's Section 1983 claim. "Just as judges acting in their judicial capacity are absolutely immune from liability under section 1983, 'official[s] charged with the duty of executing a facially valid court order enjoy[] absolute immunity from liability for damages in a suit challenging conduct prescribed by that order.'" *Turney v. O'Toole*, 898 F.2d 1470, 1472 (10th Cir. 1990) (citations omitted) (quoting *Valdez v. City & Cty. of Denver*, 878 F.2d 1285, 1286 (10th Cir. 1989)). "[T]he power to execute judicial

decrees is no less an important and integral part of the judicial process than the roles of those officials previously afforded absolute immunity" and "[a]bsolute immunity for officials assigned to carry out a judge's orders is necessary to insure that such officials can perform their function without the need to secure permanent legal counsel." *Valdez*, 878 F.2d at 1287-88. The Tenth Circuit has stated:

> To force officials performing ministerial acts intimately related to the judicial process to answer in court every time a litigant believes the judge acted improperly is unacceptable. Officials must not be called upon to answer for the legality of decisions which they are powerless to control . . . [I]t is simply unfair to spare the judges who give orders while punishing the officers who obey them.[11]

*Id.* at 1289 (emphasis added). Under the doctrine of absolute immunity, therefore, acts taken at the direction of the state court orders cannot form the basis for Plaintiff's Section 1983 claim against T-Mobile. *See T & W Inv. Co. v. Kurtz*, 588 F.2d 801, 802-03 (10th Cir. 1978) (holding that receiver named as a defendant in corporation's civil rights action was a court officer who shared the judge's immunity to the extent he carried out the orders of his appointing judge); *Jarvis v. Roberts*, 489 F. Supp. 924, 929 (W.D. Tex. 1980) (in case involving claim under Section 1983, finding that—where bank was merely complying with court order—actions complained of "were essentially those taken by the Court through its orders" and bank could not be held liable). For these reasons, dismissal of Plaintiff's Section 1983 claim against T-Mobile is warranted.

**3. Conspiracy**

Finally, Plaintiff asserts a claim for conspiracy, alleging Defendants conspired to commit the wiretap and constitutional violations asserted in his amended complaint. This claim must

[11] Indeed, Plaintiff's Section 1983 claim against the state court judge who issued the orders—Judge Platt—was previously dismissed on the basis of absolute immunity. Docs. 8, 69.

likewise be dismissed pursuant to Rule 12(b)(6) because the amended complaint contains only conclusory allegations of conspiracy and is devoid of any facts to support those allegations.

To state a claim for conspiracy under Section 1983, "a plaintiff must plead that he was deprived of a constitutional right as a result of a conspiracy comprised of or including conspirators acting under color of state law." *Leatherwood v. Rios*, 705 F. App'x 735, 739 (10th Cir. 2017). A federal conspiracy action under Section 1983 "requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010). Similarly, under Kansas law, the elements of a civil conspiracy claim are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds; (4) one or more unlawful overt acts; and (5) damages as a proximate result thereof. *Jackson v. Kan. Cty. Ass'n Multiline Pool*, 2005 WL 756773, at *6 (D. Kan. 2005). Under either state or federal law, conclusory allegations of conspiracy are insufficient; a plaintiff must instead plead specific facts to establish the requisite elements. *Brooks*, 614 F.3d at 1228; *Jackson*, 2005 WL 756773, at *6.

Here, Plaintiff's conspiracy claim fails for two reasons. First, for the reasons set forth in Parts II.B.1 and 2, *supra*, Plaintiff has failed to establish the existence of an underlying unlawful act—either a violation of state or federal wiretap law or a constitutional violation—necessary to state his claim. Second, Plaintiff does not plead facts sufficient to infer the existence of a meeting of the minds, an agreement, a general conspiratorial objective, or any concerted action among Defendants. Plaintiff alleges only: that Virden, Brown, and Babcock "knowingly conspired with one another" to commit the alleged acts; that Virden, Brown, and Babcock knew or had reason to know that the interceptions were legally required to take place only within Judge Platt's territorial jurisdiction; and that Virden, Brown, and Babcock knew that T-Mobile had intercepted text

messages without judicial authorization, but nonetheless disclosed the messages to prosecutors. Doc. 70 ¶¶ 43-45. These conclusory allegations are not enough. Plaintiff has not come forward with specific facts showing the requisite elements of a civil conspiracy. Although, given his pro se status, Plaintiff's pleadings are to be liberally construed, Plaintiff is not relieved of his burden to allege sufficient facts upon which a recognized claim can be based. *See Ivory v. Platt*, 2016 WL 5916647, at *6 (D. Kan. 2016). Dismissal of Plaintiff's conspiracy claim is warranted.

**III. CONCLUSION**

THE COURT THEREFORE ORDERS that Defendants' motions to dismiss the amended complaint (Docs. 74, 76, 85) are GRANTED.

IT IS SO ORDERED.

Dated: November 16, 2018

/s/ *Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE